Good morning, everyone. This morning we have three matters on our calendar, and we'll call the first case, Hill v. Cosby, appellate number 16-1362. Honors, may it please the Court, my name is George Contos. I'm here on behalf of Renita Hill. The case filed against Hill-Cosby. I'm here with Claire McGee of my office. I'd like to take ten minutes for my main argument. You want ten minutes, and five minutes for rebuttal? Five minutes for rebuttal. That's granted. I'd like to begin by discussing context in relationship to the issues that are before this Court. Context explains a lot about the jurisprudence in this area. It explains, for example, how you can have some cases where very highly inflammatory words like blackmail or extort or paranoid schizophrenic have been found not to be capable of defamatory meaning. And you can have other instances in which rather innocuous language, take for example the Oprah Winfrey case or the Weinstein case, where there was a police officer who made various statements that really on their face were quite benign, and yet they were found to be defamatory. I think you make a good point about asking about context and focusing on Mr. Singer's statement. He's speaking as a lawyer. Assume for the purposes of this question that Mr. Cosby could be responsible for his statements because he's your only defendant. Doesn't the context in which his statement matters, meaning he was a lawyer making statements? Our court in Remic thought that mattered, that it was a lawyer speaking. So apropos to your point, doesn't context allow a listener to make a judgment as to how to evaluate what Mr. Singer said? It absolutely does, Your Honor. And I think the fact that he is an attorney, and I should just point out that you have cases where attorneys have been found to have issued defamatory statements, like in the Daimler case or like in the Tucker case. But to your point, and I think this Court even said, and Your Honor was part of the panel in the Gibney case. Does an attorney have immunity for what he says in response to a complaint filed? Well, in certain instances they do, but we're dealing with pre-complaint statements that are made in this case, and I don't think that that issue was really before here. But nevertheless, there have been cases where, like the Daimler-Chrysler case and the Tucker case, which involved the estate of Tupac Shakur, where those attorneys were found to have issued defamatory statements. Getting back, Your Honor, to the point I was going to make in Gibney, it is important that the statements be viewed as they are received by the average listener, and that point was made in Gibney. And here, the fact that Martin Singer is, in fact, the spokesperson for Bill Cosby, that he has been his lawyer, would give more credence and more weight to the average listener to what he's saying, much like the Oprah Winfrey statements that were made, because Ms. Winfrey was the owner of the school and she was making statements about the headmistress. But everyone understands that a lawyer is going to advocate for their client, whether inside the well of a courtroom or out on the courthouse steps. So context in this case suggests that a listener would have that fact and know that a lawyer can speak in colorful language, I think, as written in our Remick case, and that alone is certainly not enough. And in Remick, indeed, the language of the statement at issue said something to the effect of, if you insist on attempting to extort money using the word extortion, and that was not found to be defamatory, how can this statement by Singer be found to be defamatory when actually using the word extortion was not? Right. Well, certainly there is no doubt, and we in no way take issue with the fact that a lawyer can zealously represent their client and they can use the most unkind words. But that in no way changes the idea that they cannot use undisclosed facts in a new window to do so. I'm sorry. What undisclosed fact do you contend was buried in that statement? Well, there were several. And there's a series of innuendos that Mr. Singer peppers his statement with, this allusion to people who will do anything against rich and powerful men. And lawyers, there are greedy lawyers out there that will do anything much akin to the domino effect. Well, that's an opinion that he has, and the facts that substantiate his opinion. Why can't that be defamatory? Well, you take it in context, and it's not about you. You said, Your Honor, about the word extort. And I started off by saying if you cherry-pick words and just say, Well, this is a lawyer speaking now. It's not someone that's speaking technically, of course. Absolutely. But it's not about just saying what's the strongest word, blackmail, extort, paranoid, schizophrenic. The courts have said that that's not the appropriate test. And, in fact, in Remick, the case that you just noted, the court there was careful to point out that in the appropriate context, that same word could be defamatory. So, again, it gets back to context, but I do want to point out in the Singer statement that in addition to just making this innuendo, at the very end of his statement, he says this. Over and over again, we have refuted these new unsubstantiated stories with documentary evidence. He uses the word documentary evidence as a lawyer to make it sound as though that there has been some type of investigation, that, in fact, there's documentary evidence out there. Not on this allegation, but in regard to past allegations. Well, that is correct, Your Honor. But I think the implication from that is, in every single instance, we've knocked all these down with documentary evidence, which, by the way, is not factually supported. But the facts that he's basing his opinion on are in what he says. There aren't implied undisclosed facts that he's talking about. Well, the position below on the part of the defendant was that the facts that are disclosed are twofold. First, that Singer states the length of time between the accusations, when they were made, and when the deeds took place, 20 years, 30 years, 40 years. And the other factual basis that they cite is that this idea that there are rich and powerful men who are subject to lawyers, agreed lawyers. So let's take both of those. And they're all true. Your knowledge of all those statements are true. I do not. I will grant you, Your Honor, that the very first statement, you can say the length of time. It's factual. You can say that that isn't part fact. But it's also implication. There's a clear implication that's being made by that, the length of time. Why didn't these women come forward? Well, there's a couple of explanations. Maybe they're lying, right? Well, you're entitled to your opinion. I'm entitled to my opinion. It's a difference of opinion. But is they clearly putting forth his opinion? And the facts that his opinion is based on. Now, you may not agree that this basis is a valid basis, but that is recognized as opinion that the person reading the statement and looking at the facts that it's based on can say, oh, well, that's not very likely to be true, or, oh, yeah, I really agree with him. Well, that's exactly what this circuit said in the Redco case, right? And it talked about the importance. I mean, they're all opinions when you really look at it, right? And so is it a pure opinion or a mixed opinion? And so has the person that's stated that opinion done so in a way that allows the person who's evaluating it to make a judgment based on something that's real or something that's in your way? So let me ask something. You're an attorney. You represent someone that's been accused. What can you say without getting in trouble with the defamation law? You can say they're fact of and happy and say nothing? You can say a whole lot. You can say a whole lot. You can use unkind words. Well, these were unkind words, isn't it? They certainly were, but they were more than that. And that's why it's not just an argument. Well, what can you say? What can you say if you're accused of that you think would be a safe harbor? With due respect, it depends. And I'll answer your question in this way. I could use very nice words, right? I mean, if you take a look at what Oprah Winfrey said. Let's focus on, but I think that in response to Judge Cowen, Ms. Hill made a statement. I know what that statement was. Right. Your counsel for Mr. Cosby, what is it within bounds to say in response to that? I think that's what people would like to hear. If we wanted to pick out words and language, I would submit to the court that I could use even stronger words than what Mr. Singer used and still be safe. Like what? Give us an example of what you would say if you were in Singer's position or representing his client. I can tell you this, that when he's talking about this idea of these women who bring up, there's no shortage of lawyers who will go after rich, powerful men. And so it makes no sense that not one of these women who just came forward had ever asserted a legal claim before. I mean, the clear implication there is that they're making this up and that they're after money. Now, he doesn't come out and say that. You could, as an attorney, I could use the word extort or blackmail defending my client, as we know, because of Remick, as we know, because of Greenbelt. So it really does depend on the context. When you read these three statements together or independently, as the court in Green v. Mitzner said, it's not whether or not they're defamatory. That's not the question for the court. If there are competing alternative interpretations, one that's entirely benign, but one that could conceivably be defamatory, then the case should go to the jury. That's exactly what the court is saying. As long as it's an opinion, why do you have to – it's not even – An opinion is going to be your opinion. You know what's bothering me about this case? If someone is accused of a horrendous wrongdoing, the federal law is that if that person does not deny it vehemently, when a trial occurs later on about that statement, if the person doesn't deny the allegation, a jury is charged – this is a federal charge, you've got to accept it – a jury may infer the fact that you did not vehemently deny the allegation. A jury may, but it's not required, to infer from that fact that the statement is true. So that there's a real free speech component here for someone in Crosby's position. And if you don't deny it vehemently, a jury later on can be charged that that's to be taken as evidence that you couldn't deny it. I understand, but denying it and accusing somebody of – and linking them to people that had made up false rape allegations, as Camille Crosby did, are two different things. I think my time is up, or I'm happy to stay. Any further questions at this time? Okay. Counsel, you can be seated. We'll see you on rebuttal. Thank you. May it please the Court, first of all, I'd like to thank the Court's indulgence for allowing me to appear today. On behalf of Defendant Pelley, Ms. Lillian Crosby, my name is Angela Grusa. Context is very important. And the allegations that are laid out in the complaint themselves set forth the context. And that is, by her own admissions, Plaintiff Pelley contends that on November 13, on November – slightly before that – an op-ed piece was written by another accuser to the Washington Post to be published. On November 13, a group of other women came forward making accusations, and that she herself came forward several days later. The Singer statement that's alleged is a statement that Mr. Singer wrote to the Washington Post in response to the publication of accusations made. The statement is pure opinion as a court rule. It, if anything, is an indictment to the journalistic standards that he opined were not being applied in repeating accusations. Isn't that more true of the statement maybe of Mr. Cosby and Mrs. Cosby than Singer? It isn't, because the point of this stating that they are unsubstantiated and concluding that this is an example of the media's great neck brush to run stories without any corroboration or adherence to traditional journalistic standards. The context of this letter to the editor of the Washington Post is recommending the Washington Post for failing to adhere to proper journalistic standards. But the first sentence of it talks about claims that are being characterized as unsubstantiated fantastical stories. Isn't that a comment more on the source of the stories, not on the media? Unsubstantiated means no evidence has yet been produced. It doesn't mean it's false. It doesn't mean it's true. It means we are waiting for substantiation, which in essence is akin to the requirement that people be deemed innocent until proven guilty. That, in essence, is the context of Mr. Singer's statement. Well, the Singer statement, how is that any different than the statements in Tucker and Chrysler and Green? Attorneys were not given any immunity because they are attorneys for making statements which are outlandish. It's interesting. The Tucker case is very distinguishable. In Tucker, a complaint had been filed and a lawyer came out and made a statement. He chastised the plaintiff for seeking recovery for lack of sexual relations. An amended complaint was then filed in which the lack of consortium claim was very clearly eliminating recovery for lack of sex. The lawyer, in receipt of that first amended complaint, continued to issue statements stating that the plaintiff, ridiculing the plaintiff for seeking damages for lack of sexual activity. The lawyer in that case was simply going above and beyond stating his opinion. He was misstating allegations. He was misreporting facts. And that gave rise to the court's assessment. Well, the lawyer was making statements like extortion and some other, making criminal statements. Well, we know under the line of cases, whether it's Fram or Remick, that a lawyer's opinion of whether a claim is extortion is protected. Here, the claims, the statements in Mr. Singer's letter are very circumspect. They do not rise anywhere near the level of claiming extortion or false reporting. Here, we have a simple situation of the classic. The First Amendment freedom of speech is not a one-way street. Well, I meant to ask you, Officer, do you have a claim here that that we're dealing with any type of limited public figure here in these women making this statement and thrusting themselves into what is a national known case at this point? First, we believe this is pure opinion, and yes, the appellant here, plaintiff here, injected herself into the public space and created a limit or an implied public figure, quasi-public figure status. How does she do that, though? Because isn't part of the public figure, limited public figure analysis, also that the dispute in which one insinuates itself into is a type of dispute that would affect those outside of the dispute? So it may be newsworthy because that's what the media might be interested in, but does it really fall into that category such that both components of the limited public figure analysis are satisfied? In the context of the time period in which this was happening, Ms. Hill, along with a number of other women, had begun to step forward and make their public accusations. It was a virtual firestorm of daily statements made by accusers, with the Washington Post, as is alleged in the complaint, stepping forward. In doing that, these women led a movement, as we've now seen play out over the course of this year, in which they very proudly established themselves as leaders of this movement, contending that there was a serial pattern of misconduct by my client. By insinuating herself into the public space, and more importantly, by making extremely, I would call it inflammatory even, provocative allegations, she was inviting a response. The fact that the defendant, or someone speaking on his behalf, would deny those allegations should have come as no surprise to her. The fact that a defendant, or someone speaking on his behalf, would call out facts that would call into question whether the claims had yet been vetted should not have come as a surprise to her. None of the statements in Mr. Stinger's letter to the editor to the Washington Post, should have come as a surprise to her. Is that the test? No, but it does go in line with the cases that say when an individual raises a subject that is certainly going to have an impact on the accused, they should not be surprised when the accused responds, particularly when it's a lawyer, whose job it is to do that. A lawyer's job is to respond to the accusations made against his own client. Yeah, but the response is more than a response. It's a response saying that criminal conduct was afoot. Certainly the accusation is that he engaged in a crime. And Mr. Stinger's statement, absolutely appropriately responsive to that, is was there a police report? Has anyone vetted to see if a civil claim was sued? In fact, there wasn't. He is responding very much to the nature of the claims that are being asserted in the context of the nature of the claims that are being asserted. He was doing exactly what a lawyer would be expected to do, which is why his statements would fall under the category of opinion by a lawyer. Well, the question before us and other, if a lawyer can overstep his defense position, whether this statement by Stinger goes beyond substantiating what was an opinion, if we deem this an opinion, which would be looking at it in a light most favorable to Stinger. I have not seen or have I heard from the opposition here anything that would transcend the statements in this letter to the editor into something other than an attorney opinion. There is really no implied defamatory contact. And certainly to the extent even the court were to have concluded that, the statements, the facts that support Mr. Stinger's opinion are laid out. Well, your first line of defense is what? They are not other concerning his client? Our first line of defense, these are pure opinions from the lawyer.  They're not defamatory. And if they are, they're not other concerning here? Correct, absolutely. His client. There is absolutely no reference to our client. But who else could it be referenced to? That was part of your brief, it's not other concerning, but who else could they be referring to? They were of a generic nature in the sense that to the extent people are coming forward with claims that are 30, 40, and 50 years old against our clients, they are suspicious. They need to be substantiated. That's the essence of it. And so what are the disclosed facts in the Stinger statement that you contend make it a protected opinion and immune from defamation liability? He states very clearly and succinctly the facts that they were brand new, that they were never before heard, that they were stories about things that occurred 30, 40, and 50 years ago, and that they were decades, decades old events that during that period of time, the accusers had said nothing, had not made police reports or gone to law enforcement, had not asserted civil claims, and on that basis he asserts that they have been unsubstantiated. And so that laundry list you just gave us should allow a listener to make a judgment as to whether this opinion should be accepted or not, and that's why from your view it's not subject to liability. That's correct. He has laid out the basis for his opinion so that a reader could say, well, I don't think that's a strong enough basis or not, but the basis is there. Well, the question is what a reasonable person would consider this, an opinion or whether they consider it a statement more akin to the cases which have held attorneys liable for saying a little too much. If anything, the nature, the manner in which he has laid out the basis for his opinion is far more descriptive than in cases in which we have seen the courts have found. It's more descriptive, but the language is graphic. I mean, the language is basic criminal allegation language. Descriptive, I agree with you, but the words, when you use the word extortion, you're talking about criminal law. You're not talking about using pressure, you know. Do you think that there's anything in the Singer statement from which one could infer extortion? Because the word extortion doesn't appear there. There is nothing from the language that one could infer extortion, and quite frankly, I think to the extent that counsel had addressed the court or directed the court's attention to the language in which, in fact, I think Mr. Singer is more critical of our fellow lawyers than the accuser when he says there are lawyers who will file lots of claims. That's not an extortion implication by any stretch. That's simply saying there are a lot of hungry lawyers out there. Turning to Mr. Cosby's statement for a moment. Sure. There was a representation in the brief, but it wasn't in the complaint, that this statement came on the heels of a radio station encouraging people going to one of his shows to act out and heckle. Is that an accurate context? It's not in the complaint, but that was in the brief. Once again, that would be a situation in which the entire context of the statement would need to be addressed. But we only can rely on what's in the complaint because of the motion to dismiss the case. So we can't rely on that representation, right? We can only rely on what the statement is. In the briefing below, the court was drawn attention to the full context of the statement, and it was provided to the district court to complete the record. So there's no dispute as to the sequence of events that led to Mr. Cosby's statements. Is that correct? Hard choice. Which of these statements do you feel are the most easily classified as defamatory? I don't think either. Well, no, the mega-choice value I'm going to put you on. The least defamatory?  The closest to defamatory. Apologies to the court. I have seen a lot of defamatory statements, and I've read a number of cases. I am at a loss. They're all the same. Is that it? They're all the same. If there's anyone who can claim they have been defamed in any stretch of the imagination, perhaps the lawyer, perhaps the bar of our various courts. Or the journalists. Right. I think there's so much truth in that statement that I have a hard time even suggesting that that might have been defamatory. When Mr. Cosby, in his last line of that statement, says, I know people are tired of me not saying anything, but a guy doesn't have to answer to innuendos. People should fact-check. People shouldn't have to go through that and shouldn't have to answer to innuendos. Is there anything that we should construe from that as a suggestion that the sources of these accusations are less than credible? No, I think that falls in the identical category of making a statement that something is unsubstantiated. Innuendo does not mean something is false. It simply means that until an innuendo is established, until it is given context and information to support it, it can be either true or false. In that sense, until he, again, a person who's been accused, entitled to be presumed innocent until proven guilty, until he is proven guilty, it is still an innuendo. Thank you. Okay. Thank you very much for your argument. Thank you. Before you get started, I'm interested in your response to the question you asked. Which of these three do you feel is your best shot at a deformatory statement? I'm not going to defer or dodge the question. I'll answer it directly. I think that the Singer and the Camille Cosby statements are much closer to the line. I think, frankly, that the Bill Cosby statement, there's just quite not as much there. I do think, though, that the statements really can be taken in context as a concerted effort because the Martin Singer statement and the William Cosby statement were actually made on the same day. Your position is directly contrary to the position that for the very reason we have a statute of limitations. You're arguing against the statute of limitations. But what Singer said is he said his statements in praise of the statute of limitations, where these people did for 40 years. Right, Your Honor. In answering to when you asked counsel, I don't know if it was you or any of the other judges that said, what's the factual basis? She only talked about, counsel only talked about one thing, and that's this length of time issue. And perhaps if that was the only thing that was alluded to, then maybe it would be a closer call. But Singer does more than that. He not only says, boy, there's been a lot of time that's passed since this has happened. He then goes out and makes a statement that is almost word for word. If you read the Dommler-Chrysler opinion in terms of what the court found actionable, it's almost exactly the same. Here's what the Dommler court found actionable. For too long, lawyers have been exploiting class actions, turning these lawsuits into a form of legalized blackmail and frivolously filed because they believe that the threat of massive class actions can coerce a company into settlement. Martin Singer says almost the same thing with respect to these women. He says these women who have come forward in the past two weeks, and then he says, there has never been a shortage of lawyers willing to represent people with claims against rich, powerful men. So it makes no sense that none of these women who just came forward didn't do it before. But isn't it an indictment of the bar, not the accusers? Absolutely not. He's talking about these women. If you look at the context of the statement, I don't – He's not saying that the women have a valid claim. He's saying that there are lawyers because the person being accused is rich will go after that lawyer whether the claim is true or not. The question is whether or not there are alternative interpretations. Let's suppose for somehow and concede that Martin Singer is actually making a critique of the – in support of the statute of limitations. I mean, conceivably you could say that. Frankly, I don't think that that's a very plausible thing when you read this in context. He's pointing his finger at these women and saying, look, they didn't do this for so long. What does that mean? I mean, he didn't certainly posit the other part of it, which is women who are sexually abused, people that are sexually abused might be reluctant to come forward. He didn't say that. The clear implication is that they made it up. When you couple that with the greed of lawyers and people who will come out and go after rich and powerful men, it's certainly clear that the implication there – But the basis for his opinion is there. Now, whether that's a good basis or a bad basis, if his opinion is based on facts one, two, three, and facts one, two, three are in the statement, then the person reading the statement, reading the opinion, reading the basis for the opinion can say, boy, that guy is full of hooey, or he is absolutely right. Your Honor, it all depends what facts one, two, and three are, I would suggest to the Court. And I would compare the facts one, two, three here, which are clearly just implication and undisclosed facts, to the facts one, two, three, for example, in the Gibney case, where there was a reference about why the claims were unsubstantiated. They were because we actually did an investigation, and our opinion is that it exonerated these people. Martin Singer talks about – sorry, Your Honor – there being documentary evidence. There is no documentary evidence. I understand that he's basically saying we've always refuted these with documentary evidence, and all these other things. When you take these statements and put them together, the facts one, two, three aren't real facts. They're not really there. It's innuendo. It's which people get attacked all the time. I mean, I don't know if that's a fact. One of the facts here that I don't think I even touched on, and certainly not your adversary, is why isn't your client a limited public figure at this point? She made a statement about an issue which is brewing nationally. It's been in every newspaper. To the extent she's a limited public figure, and you've made no allegation of any actual balance here, perhaps you've said this is a wild statement to make and it's defamatory, but there's nothing about being actually malicious about the statement. Alicia, I don't think you did anything until the reply brief, certainly not your main brief. Right. Well, I'm going to address those issues. First of all, is she a limited public figure? The answer is no. And Judge Schwartz pointed out the Firestone case. I don't think it meets the standard of that being the case. Also, in terms of Renita Hill throwing herself in with some of these other women as they were characterized, she spoke one time, ever. There's no requirement to be a limited public figure that you have to speak a dozen times. If you can speak one time, you don't even have to speak. You can write one time. I understand. That's not, you know. I understand. Let me just say. No, no, no. I want to make sure that you were done, of course, but I wanted to undercut this whole thing and just get to the point of it, which is I don't think it matters. And it doesn't matter because this is really a pleadings issue. And if you read in our brief, we have, in essence, if you read the complaint as a whole, we have certainly pled actual malice here. Where have you pled in your complaint actual malice? We have. As detailed in the brief, I think there are three paragraphs. We basically say that Cosby, when he speaks, he's speaking through those persons who are charged and able to speak on his behalf, including Singer and Camille Cosby. And we say then that the statements that were made by those individuals were made with malice. Well, that's conclusive, Jordy. Under the law, if you're accusing a public figure of actual malice, you have to put down the facts. You can't have a conclusive allegation. And I agree with my colleague that I saw nothing in this case that spelled out actual malice. And if this person is a limited public figure, then at most you could say is that the statement by Singer and the rest of her are wild, stupid, inarticulate ways of speaking. But you can't say it bespeaks a basic, disdained hatred and the malicious requirement for actual malice. Your Honor, I'll just note that that issue was briefed below, and the court below did not use that as a reason. We still briefed it, but the court didn't use that as a reason for dismissal. And in our brief below, we requested leave of court to amend the complaint to the extent that the court did not find that that was sufficiently pled, although I do think that it is when you read the complaint as a whole. And so just to button up this point, to the extent that the court would feel that, we would request leave to amend the complaint. I don't think that it would be futile. It would be quite easy to do. And frankly, with all due respect, I do think that it was pled sufficiently if you read it in total. Okay. Thank you for your arguments. Thank you both for a very well-argued case. And we'll call the next case.